22-1445 and 23-1002

# IN THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

KALEY CHILES,

     Plaintiff-Appellant,

v.

PATTY SALAZAR, in her official capacity as Executive Director of the Department of Regulatory Agencies; et al.,

     Defendants-Appellees.

On Appeal from the United States District Court
for the District of Colorado

The Honorable Judge Charlotte N. Sweeney
District Judge

D.C. No. 1:22-cv-02287-CNS-STV

## APPELLEES' REPLY BRIEF

PHILIP J. WEISER
Attorney General
SHANNON WELLS STEVENSON*
Solicitor General
HELEN NORTON*
Deputy Solicitor General
ROBERT FINKE*
First Assistant Attorney General
BIANCA E. MIYATA*
JANNA K. FISCHER*
Assistant Solicitors General

ABBY CHESTNUT*
BRIANNA S. TANCHER*
Assistant Attorneys General
Department of Law
1300 Broadway, 8th Floor
Denver, Colorado 80203
720-508-6651
*Counsel of Record
*Attorneys for Defendants-Appellees/Cross-Appellants*

# TABLE OF CONTENTS

ARGUMENT ............................................................................2

I.    Ms. Chiles lacks standing to bring her pre-enforcement claims ...2

A.    Ms. Chiles failed to allege that, in the past, she engaged in any conduct prohibited by the Law..........................................................3

B.    Ms. Chiles failed to allege that she has a present desire to provide conversion therapy in violation of the Law .......................10

C.    Ms. Chiles failed to assert a plausible claim that she presently has no intention to practice conversion therapy because of a credible threat of enforcement of the Law against her ...................13

CONCLUSION .........................................................................17

CERTIFICATE OF COMPLIANCE.......................................................19

# TABLE OF AUTHORITIES

## Cases

*Anthony v. United States*, 667 F.2d 870 (10th Cir. 1981) ........................6

*D.L.S. v. Utah*, 374 F.3d 971 (10th Cir. 2004) ........................................15

*Day v. Bond*, 500 F.3d 1127 (10th Cir. 2007) ......................................8, 9

*Initiative and Referendum Inst. v. Walker*, 450 F.3d 1082
    (10th Cir. 2006) ..........................................................................3, 15, 16

*Kan. Nat. Res. Coal. v. U.S. Dep't. of Interior*, 971 F.3d 1222
    (10th Cir. 2021) ........................................................................................9

*Libertarian Party of L.A. Cnty. v. Bowen*, 709 F.3d 867
    (9th Cir. 2013) ..................................................................................13, 14

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ..........................1, 2, 9, 17

*Peck v. McCann*, 43 F.4th 1116 (10th Cir. 2022) .......................................
    ........................................................................ 2, 3, 11, 12, 13, 15, 16, 17

*Rio Grande Found. v. Oliver,* 57 F.4th 1147 (10th Cir. 2023) ...............12

*Spokeo v. Robins*, 578 U.S. 330 (2016) ..............................................3, 17

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ......................11

*United States v. Kennedy*, 225 F.3d 1187 (10th Cir. 2000) ...............6, 10

*Virginia v. Am. Booksellers Ass'n., Inc.*, 484 U.S. 383 (1988) ............7, 14

*Warth v. Seldin*, 422 U.S. 490 (1975) ........................................................5

*Winsness v. Yocom*, 433 F.3d 727 (10th Cir. 2006) .................................16

## Statutes

Colo. Rev. Stat. § 12-245-202(3.5) (2022) .........................................1, 4, 5

Colo. Rev. Stat. § 12-245-202(3.5)(a) (2022) ......................................7, 12

Colo. Rev. Stat. § 12-245-202(3.5)(b) (2022) .......................................4, 8

Colo. Rev. Stat. § 12-245-224(1)(t)(V) (2022) ......................................1, 5

Colorado's Minor Conversion Therapy Law (the "Law") protects Colorado's children from conversion therapy — a form of mental health treatment that causes a myriad of severe harms to children by attempting or purporting to change their sexual orientation or gender identity. Colo. Rev. Stat. §§ 12-245-202(3.5), -224(1)(t)(V) (2022); *see* Principal-Resp. Brief 2, n.2. Kaley Chiles asks this Court to declare the Law unconstitutional, despite the fact that the record on appeal is devoid of evidence that she has ever engaged in conversion therapy, that she plans to do so, or that Colorado has ever considered, much less pursued, enforcement action against her professional license. Ms. Chiles bears the burden of establishing standing to bring her pre-enforcement challenge. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). She has not carried this burden.

Ms. Chiles' pleadings lack the specificity required to establish Article III standing. Although "[a]t the pleading stage, general factual allegations of injury. . . may suffice," Ms. Chiles has failed to make even general factual allegations that her past and desired conduct would fall within the scope of the Law. *Id*. By obfuscation and misconstruction of the Law, and of her own allegations in her Complaint, Ms. Chiles

1

attempts to manufacture standing in this case. But Ms. Chiles' pleadings do not make clear what she has done, or what she would like to do, as it pertains to her practice of mental health care with clients under the age of eighteen. Contrary to Ms. Chiles' suggestion, standing is not available to plaintiffs for hypothetical, conjectural injuries, not even in the First Amendment pre-enforcement context. *Id.*; *Peck v. McCann*, 43 F.4th 1116, 1129 (10th Cir. 2022). Without a clear demonstration of any injury, Ms. Chiles has failed to establish standing.

The State asks this Court to reverse the District Court's finding of standing and dismiss Ms. Chiles' appeal.

## ARGUMENT

### I.    Ms. Chiles lacks standing to bring her pre-enforcement claims.

Ms. Chiles fails to sufficiently allege an injury in this pre-enforcement context, as the record before this Court makes clear that she has failed to present: (1) any evidence that in the past she has engaged in the type of conduct affected by the Law; (2) affidavits or testimony stating her present desire to engage in conduct within the reach of the Law; or (3) any plausible claim that she presently has no intention to do so *because of* a credible threat that the Law will be enforced against her.

*Initiative and Referendum Inst. v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006) (emphasis in original); *Peck*, 43 F.4th at 1129-30.

### A. Ms. Chiles failed to allege that, in the past, she engaged in any conduct prohibited by the Law.

Ms. Chiles has failed to make a sufficient record in this case to satisfy her burden of showing that she has, in the past, engaged in the practice of conversion therapy upon children — which is the conduct targeted by the Law. Though she could have, Ms. Chiles has not provided any sworn affidavits or requested a hearing so the District Court could have the benefit of testimony from witnesses or experts in this case. On the record currently before this Court, Ms. Chiles' claims of injury fail to allege that she suffered any "invasion of a legally protected interest," much less one that is concrete or imminent, as is required for Article III standing. *Spokeo v. Robins*, 578 U.S. 330, 339 (2016).

First, Ms. Chiles' arguments in her Response-Reply Brief misinterpret the Law, which prohibits a mental health professional from engaging in "practice or treatment . . . that attempts or purports to change [a child's] sexual orientation or gender identity, including efforts to change behaviors or gender expressions or to eliminate or reduce sexual or romantic attraction or feelings toward individuals of the same

sex." §§ 12-245-202(3.5), -224(1)(t)(V). Ms. Chiles has not sufficiently pleaded facts supporting standing for her pre-enforcement challenge in her Complaint: prior to passage of the Law, she "helped clients freely discuss sexual attractions, behavior and identity by talking with them about gender roles, identity, sexual attractions, root causes of desires, behaviors and values," and since passage of the Law "she has continued to have these discussions freely with some clients but has intentionally avoided conversations with clients that may be perceived as violating the Law." App. at 037.

Ms. Chiles' description of her own conduct, as alleged, either before or after the enactment of the Law, does not violate the Law because conversations exploring sexuality and gender topics fall squarely within the permitted conduct explicitly carved out by section 12-245-202(3.5)(b). What the Law prohibits is the practice of conversion therapy upon children — that is, conduct that seeks or purports to change a child's sexual orientation or gender identity. Nowhere does Ms. Chiles allege that she has engaged in conduct seeking to make those changes in children. In fact, by her own Complaint, Ms. Chiles states that she "does

not seek to 'cure' clients of same-sex attractions or to 'change' client's sexual orientation." App. at 038.

Next, Ms. Chiles overstates the Law and misconstrues how the Law affects her professional conduct as a licensed mental health provider. The Law does not seek to limit an exchange of ideas concerning sexuality and gender identity. Resp.-Reply Br. at 6-7. Instead, it prohibits licensed and registered mental health professionals from utilizing their position and training to employ therapeutic treatments and practices to try to change a child's sexual orientation or gender identity. §§ 12-245-202(3.5), -224(1)(t)(V). Ms. Chiles fails to meet her burden if "standing does not adequately appear from all materials of record," which it does not here. *Warth v. Seldin*, 422 U.S. 490, 502 (1975).

There are no allegations in the record that Ms. Chiles has ever changed, or attempted to change, any client's sexual orientation or gender identity, let alone a client under the age of eighteen. App. at 37-40. For the first time on appeal, Ms. Chiles attempts to expand the record by stating that "Chiles has and will continue to help clients dealing with sexual attractions, behaviors and identities." Resp.-Reply Br. at 6. But this Court's review is limited to what appears in the record that was

5

considered by the District Court. *United States v. Kennedy*, 225 F.3d 1187, 1191 (10th Cir. 2000); *see also Anthony v. United States*, 667 F.2d 870, 875 (10th Cir. 1981) (on appeal, parties are "not grant[ed] license to build a new record.")

Ms. Chiles now suggests that this Court should read the allegations in her Complaint expansively. While the Court may read her allegations liberally, Ms. Chiles cannot augment her allegations now to assert additional facts that were not before the District Court. And even if Ms. Chiles had made this allegation in her Complaint, "help[ing] clients [deal] with sexual attractions, behaviors and identities" does not violate the Law, so long as this assistance does not include efforts to change minor clients' gender identities or sexual orientation. Resp.-Reply Br. at 6.

Ms. Chiles responds by relying on her assertion that she previously had freer conversations with minor-aged clients concerning their sexuality and gender identity. App. at 037. Without more, this Court cannot discern if these "conversations" would violate the Law. If Ms. Chiles' conversations with her clients were not coupled with the provision of mental health treatment that purported or sought to change a child's

sexual orientation or gender, she has not alleged that she historically engaged in any conduct that violated the Law. § 12-245-202(3.5)(a). Nor does Ms. Chiles explain what she said in "freer conversations" that she does not, or cannot, say now.

Ms. Chiles' attempts to divert the Court from her actual allegations in the record in this case are not supported by the case law she cites in her Response-Reply Brief. The sparse and insufficient record here stands in contrast to the records in those cases. In *Virginia v. American Booksellers Association., Inc*, the trial court held a preliminary injunction hearing that also served as a trial on the merits. 484 U.S. 383, 390 (1988). Witnesses were called, testimony was taken, and multiple demonstrative exhibits were entered into the record, allowing the court to develop a fulsome understanding of the parties' arguments regarding the scope of the law, the plaintiffs' allegations regarding standing, and how the plaintiffs contended their conduct had and would continue to fall under the scope of the challenged law. *Id.*

Here, Ms. Chiles has created no such record. Unlike the *American Booksellers* plaintiffs, who showed they understood the law at issue and how it was applicable to their conduct, Ms. Chiles' own statements in her

Complaint do not indicate that she interprets the Law here to proscribe the therapy she desires to provide. Instead, she makes deficient assertions that the Law "may" apply to the type of conversations she previously had. App. at 037. There is no concreteness in Ms. Chiles' interpretation of the Law.

Ms. Chiles misapplies the Law to create an illusion of standing where she has none. Despite her expansive paraphrasing of her previous allegations, her Complaint does not support a finding of standing. Ms. Chiles contends that the holding in *American Booksellers* requires this Court to accept any interpretation of a challenged law's scope suggested by a plaintiff. Resp.-Reply Brief at 7. That reading falls short where, as here, a challenged law explicitly exempts from its reach the conduct the plaintiff has engaged or wishes to engage in. *See* § 12-245-202(3.5)(b). Article III standing may not be created by a plaintiff's facially erroneous interpretation of the Law.

Ms. Chiles urges this Court to hold that standing can be found anywhere a plaintiff says it is so, even if the plaintiff's past and desired conduct is disconnected from the scope of the law being challenged. Ms. Chiles cites to *Day v. Bond*, asking this Court to assume that Ms. Chiles

will prevail on the merits when determining standing. 500 F.3d 1127, 1137 (10th Cir. 2007). However, her quotation of *Day* stops short of including the court's conclusion in that case. Resp.-Reply Br. at 7-8. On the very same page of the quoted opinion, the court in *Day* declined to find standing, stating "[b]ut there is still work to be done by the standing requirement, and Supreme Court precedent bars us from assuming jurisdiction based upon a hypothetical legal injury." *Day,* 500 F.3d at 1137-38 (citing *Lujan*, 504 U.S. at 560).

Ms. Chiles' allegations are based in hypothetical legal injury, arising out of her misinterpretation of the Law and overly generous description of her allegations. In fact, the record before this Court does not provide any "sufficiently concrete or nonspeculative" allegations to support Ms. Chiles' standing in this matter. *Id.* at 1133. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" when establishing Article III standing. *Kan. Nat. Res. Coal. v. U.S. Dep't. of Interior*, 971 F.3d 1222, 1231 (10th Cir. 2021). It is unclear whether Ms. Chiles has ever provided conversion therapy to children—or to anyone—and speculation by Ms. Chiles herself that she may have is not sufficient to establish Article III standing.

## B. Ms. Chiles failed to allege that she has a present desire to provide conversion therapy in violation of the Law.

In her Response-Reply Brief, Ms. Chiles attempts to augment her Complaint by reframing her allegations about future conduct as "a desire to help clients meet voluntary, self-selected goals—*including, when appropriate, clients who want to 'change' their gender identity or sexual orientation*." Resp.-Reply Br. at 8 (emphasis added). But she may not amend her Complaint by changing her allegations for the first time in her appellate briefs. Ms. Chiles' statement in her brief that her desire to help clients meet their goals would extend to children who wish to change their gender identity or sexual orientation is nowhere to be found in her Complaint or anywhere else in the record of this case. This new factual allegation should not be considered in this Court's analysis regarding Article III standing. *Kennedy*, 225 F.3d at 1191.

Review of the record before this Court on appeal indicates that Ms. Chiles has no clear present desire to provide conversion therapy as defined by the Law. In fact, she alleges that she seeks to discuss religious views and wants to provide factual information regarding sexuality and gender identity to her clients. App. at 037, 039. The record shows that Ms. Chiles has not concretely pleaded that she wishes to engage in the

10

conducted prohibited by the Law and definitively plans to do so upon a lifting of the government restriction. *Peck*, 43 F.4th at 1130. Again, Ms. Chiles could have provided sworn declarations, or affidavits, that show she intends to provide conversion therapy upon a lifting of the Law; she did not. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161 (2014); *see also Peck*, 43 F.4th at 1130.

When the Court considers what is, in fact, contained within the record on appeal, it finds only Ms. Chiles' Complaint. In her Complaint, she states that she "does not seek to 'cure' clients of same-sex attractions or to 'change' clients' sexual orientation." App. at 038. Ms. Chiles confirms her disinterest in violating the Law by asserting that she does not use "aversive techniques" and "does not imply that categorical change in attraction is a therapeutic goal" with her clients. App. at 036. She further contends she provides supportive therapy to clients who are content with their sexual identity and encourages exploration for those who are not. App. at 015, 037-38. The record simply lacks any assertion that Ms. Chiles desires to provide conversion therapy to children and would do so if the Law was no longer in effect.

Ms. Chiles may not be held to a strict standard when it comes to establishing standing, but she is not absolved of her burden to do so. Ms. Chiles cites to *Rio Grande Foundation v. Oliver* in contending that demonstration of Article III standing in a pre-enforcement challenge should be a "low bar" to clear. 57 F.4th 1147, 1163-64 (10th Cir. 2023). But there is still a bar. Although Ms. Chiles "need not show the specific content or likely timing" of her desired conduct, she must sufficiently demonstrate a present desire to engage in the provision of conversion therapy, as defined by the Law, to children. *Oliver*, 57 F.4th at 1147; *see also Peck*, 43 F.4th at 1130.

Ms. Chiles also cites to *Rio Grande Foundation*'s language regarding the threshold for demonstrating present desire to engage in conduct prohibited by the Law; it is not meant to be difficult to satisfy, as even a general desire suffices. 57 F.4th at 1163-64. However, the record here fails to reveal even a general desire. Ms. Chiles does not allege a general desire to practice or provide therapeutic treatment to minor clients that "attempts or purports to change an individual's sexual orientation or gender identity." § 12-245-202(3.5)(a). Instead, she disclaims that desire. App. at 038. Although Ms. Chiles is a licensed

mental health professional, she alleges her present desire is to engage in conduct that a layperson could do – converse with her clients, share facts with them, and express her views. These allegations do not involve a professional treatment or practice to try or purport to change a child's sexual orientation or gender identity. Without a concrete, particularized statement about what Ms. Chiles seeks to do in her capacity as a licensed professional, there is no way to know whether she has a present intent to engage in conversion therapy. Accordingly, Ms. Chiles fails to meet the second prong set forth in *Peck*. 43 F.4th at 1130.

### C. Ms. Chiles failed to assert a plausible claim that she presently has no intention to practice conversion therapy because of a credible threat of enforcement of the Law against her.

Ms. Chiles may claim she perceives a threat of enforcement of the Law, but that does not, on its own, establish a *credible* threat rising to the level of a chill. Ms. Chiles asserts that the Law has caused her to censor herself when speaking to minor clients regarding topics of sexuality and gender identity. App. at 037. Relying on a Ninth Circuit case, she argues that self-censorship itself is a constitutionally sufficient injury. *Libertarian Party of L.A. Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013). Ms. Chiles fails to provide the full context of the Ninth Circuit

authority she cites. In *Bowen*, the Ninth Circuit explained that "in evaluating the genuineness of a claimed threat of prosecution, courts examine three factors." *Id*. Those factors include whether a plaintiff has articulated a "concrete plan" to violate the law in question; whether the prosecuting authority have communicated a specific warning or threat to initiate proceedings; and whether there is a history of past prosecution or enforcement under the challenged law. *Id*. All three of these factors weigh against Ms. Chiles.

It is undisputed here that the Boards have issued no warnings or threats regarding enforcement against Ms. Chiles and that there is no history of past prosecution or enforcement of the Law. And for the reasons articulated above, Ms. Chiles has articulated no concrete plan to violate the Law. A plaintiff's decisions based on subjective and unreasonable assessments of a threat of prosecution do not achieve Article III standing without being "based on an actual *and well-founded fear* that the challenged statute will be enforced." *Id*. (emphasis added). Self-censorship alone cannot be sufficient to establish standing; it must be accompanied by an objectively credible threat of prosecution. *See Am. Booksellers Ass'n,* 484 U.S. at 393. Ms. Chiles' subjective fear of

prosecution has no objective basis. Because the record on appeal does not demonstrate that Ms. Chiles' speech is chilled because of a credible threat that the Law will be enforced against her, she fails to meet the third prong of the test set forth in *Peck*, 43 F.4th at 1130.

Courts must consider a plaintiff's past conduct, present desire regarding future conduct, and whether the plaintiff has a plausible claim they do not intend to act due to a credible threat of enforcement when evaluating standing. *Walker*, 450 F.3d at 1089 (emphasis in original); *Peck*, 43 F.4th at 1129-30. Whether a plaintiff is truly chilled is part and parcel with the third part of this test: whether their claim that they are declining to act is *plausible* because of a *credible* threat of enforcement.

Said differently, a plaintiff must have "an objectively justified fear of real consequences." *D.L.S. v. Utah*, 374 F.3d 971, 975 (10th Cir. 2004). In fact, "courts must not intervene in the processes of government in the absence of a sufficiently 'concrete and particularized injury.'" *Walker*, 450 F.3d at 1088-89. While Ms. Chiles contends that "chilling effect" may be an independent basis for establishing standing, both *Peck* and *Walker* state that a "chilling effect" cannot independently support a court's finding of standing. Instead, the analysis of standing is similar under the

15

three-part test articulated in *Walker* and reaffirmed in *Peck*. *Peck*, 43 F.4th at 1129, n.9. In any case, Ms. Chiles cannot prevail in establishing standing whether "chilling effect" is viewed independently, or as part of the *Walker* test. Subjective chill alone cannot amount to a credible threat. *Walker*, 450 F.3d at 1089.

Ms. Chiles' argument that she does not have to allege a concrete fear of enforcement because Colorado will not disavow enforcement of the Law ignores that, on this record, she has not alleged that she wants to conduct therapy that would violate the Law. *See* Resp.-Reply Br. at 10-11. Colorado acknowledges that the Law exists and that it is charged with the Law's enforcement against conduct that violates the Law. Supp. App. Vol. II at 433-34. But the mere existence of a statute is not sufficient to demonstrate standing. *Winness v. Yocom*, 433 F.3d 727, 732 (10th Cir. 2006). Disavowal is but one factor in considering an objective fear of enforcement. *Peck*, 43 F.4th at 1132. The other factors — whether Ms. Chiles showed "past enforcement against the same conduct" and whether authority to initiate charges was "not limited to a prosecutor or agency" such that any person could file a complaint against her — both weigh against Ms. Chiles' claim of any threat. *Id*. (internal citation omitted).

16

There has been no past enforcement of the Law against mental health professionals engaging in the same conduct and the Law does not enable private parties to file legal complaints against therapists alleging violations of the Law *Id*. Ms. Chiles still must show an objectively credible threat that Colorado will enforce the Law *against her*.

## CONCLUSION

Despite Ms. Chiles' inaccurate description of the Law's scope and her efforts to expand on her allegations in her Complaint for the first time on appeal, she has failed to meet the standard required to establish Article III standing in this pre-enforcement action concerning the Law. She has not created an adequate record that she has ever provided conversion therapy, has a present desire to do so, or faces any credible threat of enforcement of the Law supporting her standing in this case. The vague pleadings before this Court fail to make even the general factual allegations required to demonstrate a concrete and imminent claim of injury. *Spokeo*, 578 U.S. at 339-40; *Lujan*, 504 U.S. at 561-62. The evidentiary bar to establish standing is not high, but neither is it nonexistent. For this reason, the Court should dismiss her appeal for lack of jurisdiction. Even if this Court finds Ms. Chiles has established

standing, for the reasons articulated in the Boards' Principal-Response Brief, this Court should affirm the District Court's order denying her Motion for Preliminary Injunction.

Dated: June 16, 2023

PHILIP J. WEISER
Attorney General

s/ Brianna S. Tancher
SHANNON WELLS STEVENSON*
Solicitor General
HELEN NORTON*
Deputy Solicitor General
ROBERT W. FINKE*
First Assistant Attorney General
BIANCA E. MIYATA*
JANNA K. FISCHER*
Assistant Solicitors General
ABBY CHESTNUT*
BRIANNA S. TANCHER*
Assistant Attorneys General
Telephone: 720-508-6404
E-Mail: brianna.tancher@coag.gov
Department of Law
1300 Broadway, 8th Floor
Denver, CO 80203
*Counsel of Record for Attorneys for
Defendants-Appellees/Cross-
Appellants

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,622 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2008 in 14-point Century Schoolbook.

Dated: June 16, 2023

s/ Brianna S. Tancher
Brianna S. Tancher
Assistant Attorney General
Department of Law
1300 Broadway, 8th Floor
Denver, Colorado 80203
Telephone: 720-508-6404
E-Mail: brianna.tancher@coag.gov